IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBRA MARIE NELSON,

         Plaintiff,

     v.

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

        Defendant.

Case No. 6:13-cv-01293-SI

**OPINION AND ORDER**

Kathern Tassinari and Mark Manning, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Suite, 200, Eugene, OR, 97401. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; L. Jamala Edwards, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

     Debra Marie Nelson ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Because the

Commissioner's decision was based on the proper legal standards and supported by substantial evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff, Debra Marie Nelson, was born on May 25, 1969 in Salem, Oregon. AR 157, 319. She was 35 years old at the alleged disability onset date and is currently 45 years old. She grew up with her biological parents in Salem and her parents divorced when she was fifteen. AR 319. Plaintiff remains extremely close with her mother, while her father is no longer a part of her life. *Id.* She married at eighteen, and stayed with her husband for eleven years. *Id.* She and her ex-husband have two children, a daughter and a son. *Id.* After her divorce, Plaintiff let the children stay with her husband because she "wasn't able to take care of [herself]." *Id.* According to Plaintiff's Work History Report, her past work includes jobs as an accounts maintenance clerk, administrative assistance, cashier, executive assistant, housekeeper, medical records technician, and office specialist II. AR 201-02.

Plaintiff protectively filed a Title II application for a period of disability and DIB on April 8, 2009. AR 157. She also protectively filed a Title XVI application for SSI on September 8, 2011. AR 168. In both applications, Plaintiff alleged disability beginning September 14, 2004. AR 181. Specifically, Plaintiff alleged disability due to depression, bi-polar II, fibromyalgia, and back injuries. *Id.*. Plaintiff requested a hearing after her applications were denied initially and upon reconsideration. AR 119-23; 128-33. On November 17, 2011, after holding a hearing, Administrative Law Judge ("ALJ") Anthony L. Johnson, Jr. found Plaintiff not disabled. AR 28. Plaintiff appealed the ALJ's decision to the Appeals Council and her appeal was denied on May 30, 2013, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff now seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

At step one, the ALJ found Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of September 14, 2004. AR 16. Although Plaintiff's average earnings from 1999 through 2004 exceeded what is considered substantial gainful activity, after the alleged onset date her work activity did not rise to the level of substantial gainful activity. At step two, the ALJ found Plaintiff had the following severe impairments: chronic lumbar strain, chronic cervical strain, fibromyalgia, major depressive disorder, dysthymic disorder, and social phobia. *Id.*

At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17. Next, the ALJ formulated the Plaintiff's RFC during the relevant period. In determining Plaintiff's RFC, the ALJ evaluated and relied upon testimony and evidence from Plaintiff, Plaintiff's mother, Oregon Vocational Rehabilitation Services, John Hagen, D.C., chiropractor Hiro Matsuno, Mary Needle, FNP, Paul Curtin, M.D., Sarah Sheffield, FNP, DeWayde Perry, M.D., Barbara Bryson, FNP, Beth Blumenstein, M.D., and State agency non-examining consultants. After reviewing the evidence, the ALJ determined that Plaintiff had the residual functional capacity to perform light work. AR 20. She cannot crawl or climb ladders, ropes, or scaffolds, but she can balance, stoop, kneel, crouch, and climb ramp and stairs occasionally. *Id.* She cannot interact with the public, coworkers, or supervisors more than occasionally. *Id.* Plaintiff also must have reasonable access to indoor restroom facilities for catheterizations. *Id.*

At step four, based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff is capable of performing past relevant work as a medical records clerk or an office specialist II because this work does not require the performance of work-related activities

precluded by the claimant's RFC. AR 25. In the alternative, the ALJ found that considering Plaintiff's age, education, work experience, the VE testimony, and the RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 26-27. Based on these findings, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting Plaintiff's subjective complaints; (2) failing to credit the opinion of Richard Browning, PMHNP, a treating nurse practitioner; and (3) finding that Plaintiff retains the ability to perform her past work. Each argument is addressed in turn.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ erred by discrediting her subjective symptom testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

In weighing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either within the claimant's testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). Other valid considerations include "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284), and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter*, 504 F.3d at 1040. The ALJ's credibility decision may be upheld

overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms. AR 23. Based on the overall evidence in the record, however, the ALJ found claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were less than fully credible for the following reasons: (1) Plaintiff was terminated from at least one provider's care due to a violation of her pain contract, and she then lied about that dismissal to her next provider; (2) Plaintiff's reported level of pain medication use was inconsistent with the alleged severity of her pain given that she testified her pain reached a level of severity requiring use of pain medications on a less than daily basis; (3) Plaintiff asserted that her primary obstacle to work was her depression, however she described her depression as lifelong and it had not prevented her from earning at or above substantial gainful activity levels in the past; (4) Plaintiff's continued focus on back pain despite being informed by multiple providers that her spine was completely normal, in addition to other comments by medical providers, suggested Plaintiff may tend to exaggerate her symptoms; (5) Plaintiff failed to avail herself of treatment that would alleviate her fibromyalgia symptoms; and (6) there was a complete lack of objective medical findings to support the claimant's degree of subjective allegations. Plaintiff contends that the ALJ improperly rejected her testimony because the reasons he provided were not clear and convincing.

### 1. Pain management contract violation

Regarding the issue of her pain contract and honesty, Plaintiff notes that the ALJ was referring to Dr. Blumenstein's termination of Plaintiff from the Wellness Program because she was using marijuana while taking narcotics. Plaintiff then points out that after termination she

began treatment with Nurse Practitioner Barrington-Shulenberger, DNP, ANP, FNP, who prescribed oxycodone, which Plaintiff used more sparingly. It is unclear to the Court how these statements rebut the ALJ's findings of dishonesty. The record shows Plaintiff was terminated from Dr. Blumenstein's Wellness Program due to her marijuana use. AR 778-79. The record also shows that on November 23, 2010, Plaintiff reported to Ms. Barrington-Shulenberger that "[s]he had been on chronic pain management contracts . . . in the past and has never ever gone against them." AR 828. To determine whether claimant's testimony regarding the severity of her symptoms is credible, the ALJ may utilize "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. The Court finds that Plaintiff's dishonesty regarding her termination from the wellness program was a clear and convincing reason to discredit her testimony.

### 2. Conservative treatment

With respect to Plaintiff's reported level of pain medication use compared to the alleged severity of her pain, Plaintiff concedes she was only taking pain medication when her pain was severe, but argues that her depression is more debilitating than her back pain. This argument also fails to directly address the ALJ's reason for discrediting Plaintiff. According to the ALJ, Plaintiff's level of treatment suggests her impairments do not result in significant functional limitation that precludes her from engaging in basic work activity. An ALJ's inference that a claimant's pain is not as totally disabling as she reports in light of the fact that she did not seek an aggressive treatment program for her ailments is a permissible inference. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Plaintiff reported to the Commissioner that Plaintiff's back pain limits her ability to work. AR 181. Specifically, she reported that her back pain interferes with driving, sitting, standing, lifting five pounds, and sitting or standing for more than an hour. *Id.* In addition, Plaintiff reported that since being in a car accident she has been in "constant pain." *Id.* Yet at the hearing, Plaintiff testified that she takes medication for back pain "maybe once every two weeks" and that her 30-day supply can last four of five months because she doesn't take the medication "very often." AR 78. Because Plaintiff's reported limitations due to back pain are inconsistent with the level of treatment she receives, conservative treatment was a clear and convincing reason provided by the ALJ to discredit Plaintiff's reported limitations.

### 3.  Evidence relating to Plaintiff's depression

The ALJ also discredited Plaintiff's testimony because Plaintiff's depression, her alleged primary obstacle to work, has been lifelong and it did not prevent her from earning at or above substantial gainful activity levels in the past. AR 24. Plaintiff testified that she began taking mediation for her depression 19 years ago, and that her depression began interfering with her ability to work "at birth." AR 79, 181. Plaintiff argues that while her depression has been lifelong, it was aggravated by the added challenge of physical pain after two motor vehicle accidents. Plaintiff's Work History Report lists sixteen jobs between November 1990 and September 2004. AR 201-02. The motor vehicle accidents occurred in May 2003 and November 2006. AR 292, 385. The ALJ noted that in May 2011, a date after both motor vehicle accidents, Plaintiff was able to put a wedding together for a friend. AR 971. The ALJ also noted Plaintiff's repeated statements that she wanted to move out of her mother's home and find a home of her own. AR 971, 1035.

On September 5, 2006, Plaintiff visited Dr. Jerry Fisher. Her chief complaint~~compliant~~ was a stiff neck. AR 379. During this visit, Plaintiff informed Dr. Fisher that she was let go from

her job in part because following the 2003 motor vehicle accidence she missed more work than before the accident. She stated that the reason for her time loss was "depression" and that she feels the accident "may have made her depression, which she has had her entire life, worse." *Id.* Two months later, in November 2006, Plaintiff was involved in another car accident. AR 385-86. In January 2011, however, Plaintiff reported she believes medication helped her feel better emotionally and because her physical pain is better managed, her overall mood has improved. AR 948. During a visit with Mr. Browning in April, 2011, Plaintiff reported that her "meds are working better than any combo ever and my pain and mood are better than ever." AR 978. In May of 2011, when Plaintiff reported she was putting a wedding together for a friend, she reported marked improved mood and anxiety. AR 971.

In finding that Plaintiff did not adequately demonstrate how her lifelong depression had deteriorated to the point where she is unable to perform substantial gainful activity as she did in the past, the ALJ cited both statements regarding Plaintiff's daily activities and noted that the record indicated Plaintiff's physical pain can be managed with medication. AR 24. Thus, the ALJ's credibility findings relating to Plaintiff's lifelong depression were reasonable and supported by substantial evidence in the record.

### 4. Symptom exaggeration

The ALJ also found Plaintiff "may tend to exaggerate her symptoms." *Id.* As an example, the ALJ noted that in May 2003 Plaintiff presented to the ER with complaints of neck pain and stiffness the day after a reported motor vehicle accident, but an objective examination was essentially normal and an x-ray of her spine was negative. AR 21, 294-96. In addition, the ALJ noted that in March 2006, Plaintiff took a psychological evaluation that was deemed invalid due to an "unusually large number of extreme items in the deviant direction; and indiscriminate and exaggerated response pattern is possible." AR 304.

Plaintiff argues that while the MRI of her back showed no disc protrusion, her complaints do not conflict with her diagnosis of a chronic cervical and lumbar strain, a condition that the ALJ found to be a "severe" impairment at step two. Further, Plaintiff argues that it is difficult to determine the extent to which her pain is caused by the back strains versus by fibromyalgia, another condition the ALJ found to be "severe." Plaintiff also asserts that her perception of pain is influenced by her depression and the depression is affected by the fibromyalgia and strains. She points to a psychological evaluation performed by Sharon Beickel, PhD, in which Dr. Beickel opines, after performing the same evaluation that was previously deemed invalid, that "[t]here does not appear to be malingering involved, she has not exaggerated her symptoms as a plea for help and her attending, understanding and persistence in activities are all within normal limits." AR 321. Because Dr. Beickel's testing, performed after the invalidated evaluation, showed no signs of symptom exaggeration, and because a normal examination and x-ray does not necessarily mean that Plaintiff was not in pain, the Court finds the ALJ's credibility findings based on symptom exaggeration were not supported by substantial evidence.

### 5. Failure to follow treatment recommendations

The ALJ concluded that Plaintiff has failed to avail herself of treatment that would alleviate her fibromyalgia symptoms, because she has failed to engage in the level of exercise needed to help manage her pain. AR 24. Plaintiff points to Dr. Beickel's evaluation in which Plaintiff reported that she exercises by walking, but that it bothers her back, so she tries to do stretches and sit-ups. AR 320. In addition, Plaintiff argues that her exercising became more frequent and regular in 2010-11 with the use of a "glider," but that her depression makes exercising difficult because it reduces her motivation, energy, and ambition. An ALJ "may consider . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. Plaintiff in this case, however, has

PAGE 13 – OPINION AND ORDER

provided an adequate explanation for why she did not always exercise to the degree

recommended. Further, the record demonstrates that after Plaintiff began using a "glider," rather

than walking, she began exercising more regularly. AR 951, 961, 1026, 1035, 1053, 1346, 1368.

Thus, the ALJ's conclusion that Plaintiff is not fully credible because she failed to avail herself

of treatment is not supported by substantial evidence in the record.

### 6.  Conclusion

A court need not uphold all of an ALJ's reasons for discrediting a claimant, so long as

substantial evidence supports the ALJ's decision. *Batson*, 359 F.3d at 1197. In this case, the ALJ

provided several reasons supported by substantial evidence for discrediting Plaintiff's symptom

and limitations testimony.

## B.  Richard Browning

Plaintiff argues the ALJ failed to give clear and convincing reasons for rejecting the

opinion of Richard Browning, Plaintiff's treating psychiatric mental health nurse practitioner. As

of August 2011, Mr. Browning was managing Plaintiff's psychotropic medication and was

seeing her approximately every six weeks or as needed. AR 1107. According to the ALJ,

Mr. Browning's opinion deserved less than full weight for five reasons: (1) Mr. Browning is not

an acceptable medical source; (2) his opinion did not provide objective findings to support its

conclusions; (3) his opinion relied solely on the claimant's subjective reporting, which the ALJ

found less than fully credible; (4) his opinion did not attempt to explain why the claimant had

been capable of substantial gainful activity in the past despite her depression; and (5) his opinion

did not provide any evidence to support that the claimant's depressive symptoms had worsened

since she ceased working. AR 25.

Under the applicable regulations, only licensed physicians and certain other qualified

specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a); *see also*

Social Security Ruling ("SSR") 06-03p. *Available at* 2006 WL 2329939 (Aug. 9, 2006) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists). Other health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of the individual's impairment(s) and how it affects the individual's ability to function." 20 C.F.R. § 404.1513(d). Because Mr. Browning is a nurse practitioner, he is considered an "other" medical source.

To reject the competent testimony of "other" medical sources like Mr. Browning, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not cite the specific record so long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ also may "'draw inferences logically flowing from the evidence.'" *Tommasetti*, 533 F.3d at 1040 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

The ALJ gave less than full weight to the opinion of Mr. Browning. AR 26. The record contains both a "Medical Opinion Letter" and a mental residential functional capacity assessment form provided to Mr. Browning by Plaintiff's attorney. AR 1106-13. In the letter, Mr. Browning identified a diagnosis of major depressive disorder with anhedonia, anxiety, and panic symptoms. AR 1108. He indicated that these impairments caused Plaintiff to isolate at home

most days, to have poor ability to cope around others, and to have elevated anxiety in work and

social settings. *Id.* Mr. Browning concluded that it is "[d]oubtful [Plaintiff] will be able to sustain

even a simple, low stress job for the foreseeable future." *Id.* Mr. Browning also completed a

mental residual functional capacity assessment. AR 1111-13. He identified marked limitations in

almost all areas of understanding and memory, sustained concentration and persistence, social

interaction, and adaptation. *Id.*

Opinions on a check-box form or form reports, which do not contain significant

explanation of the basis for the conclusions, may be accorded little or no weight. *See Holohan v.

Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (permitting an ALJ to discredit medical

opinions that "merely check[ ] boxes without giving supporting explanations"); *Crane v. Shalala*,

76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not

contain any explanation of the bases of their conclusions"). The ALJ considered and discussed

Mr. Browning's opinion. The ALJ rejected Mr. Browning's opinion, in part because it did not

provide objective findings to support his conclusions. AR 25. The ALJ noted that when provided

an opportunity in the residual functional capacity assessment to describe "aspects of the medical

history, clinical and/or laboratory findings, diagnoses, symptoms, treatment prescribed with

response, and prognosis upon which the above assessment is based," Mr. Browning left the form

blank. AR 19, 1113. This omission is a germane reason for giving less than full weight to Mr.

Browning's opinion. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005);

*Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003); *see also* 20 C.F.R. §§ 404.152(d)(3),

416.927(c)(3) (indicating that weight afforded a physician's testimony depends on "the degree to

which they provide supporting explanations for their opinions"). In this case, Plaintiff's attorney

provided Mr. Browning with an opportunity to provide a detailed explanation, and he declined to do so.

Plaintiff argues Mr. Browning's special knowledge of Plaintiff should overcome the fact that he is not an "acceptable medical source." The ALJ noted, however, that Mr. Browning's opinion does not explain how Plaintiff was capable of substantial gainful activity in the past and does not provide evidence to support a conclusion that Plaintiff's symptoms had worsened after she ceased working. AR 25. Additionally, Mr. Browning's special knowledge of Plaintiff does not overcome the conclusory nature of Mr. Browning's opinion or the fact that Mr. Browning largely relied on Plaintiff's subjective reporting, which the ALJ properly found to be less than fully credible. Despite the fact that Mr. Browning treated Plaintiff for more than two and a half years, the ALJ's reasons for giving less than full weight to Mr. Browning's opinion are supported by substantial evidence in the record.

## C.  The ALJ's Residual Functional Capacity and Disability Findings

The ALJ found that Plaintiff can perform her past relevant work as a medical records clerk or an office specialist. *Id.* Plaintiff argues that this finding conflicts with the evidence that the ALJ improperly rejected. Specifically, Plaintiff argues that the testimony of Mr. Browning and Plaintiff establishes her inability to perform her past relevant work. Because the Court finds that the ALJ's conclusions discrediting the testimony of Plaintiff and Mr. Browning are supported by substantial evidence in the record, the Court affirms the ALJ's RFC determination and disability findings.

////

////

////

////

**CONCLUSION**

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge